NELSON (HERRING v.). See Case No. 6,-424.

NELSON (LATHROP v.). See Case No. 8,-111.

---

## Case No. 10,109.

### NELSON v. McMANN et al.

[16 Blatchf. 139; 4 Ban. & A. 203; 16 O. G. 761.] [1]

Circuit Court, S. D. New York. April 2, 1879.

PATENTS—SUIT BY LICENSEE FOR INFRINGEMENT— JOINDER OF OWNER OF LEGAL TITLE
WHAT IS LICENSE.

1. A mere licensee under a patent cannot sue, in equity, for the infringement of his rights under the patent, without joining with him, as plaintiff, the owner of the legal title, and such owner is, in such case, a proper party.

[Cited in Gordon v. Anthony, Case No. 5,605; Wilson v. Chickering, 14 Fed. 918; Bogart v. Hinds, 25 Fed. 485; Cottle v. Krementz, Id. 495; Blair v. Lippincott Glass Co., 52 Fed. 227.]

2. What constitutes a mere license, defined. The instrument under which the plaintiff in this case claimed his rights, held to be only a license.

Stephen D. Law and A. B. Malcomson, Jr., for plaintiff.

Thomas William Clarke and William T. Graff, for defendants.

BLATCHFORD, Circuit Judge. The bill in this case is founded on reissued letters patent of the United States, granted to Nathaniel Jenkins, August 3d, 1869, for an "elastic packing for joints and valves exposed to destructive fluids." The original patent was granted to Jenkins, May 8th, 1866. The specification of the reissued patent describes the new packing as "an elastic packing, of indestructible properties, to a valve, joint or aperture through which a destructive fluid is to pass, such as steam of any kind, hot water, kerosene or other coal oil, hot or cold." The bill alleges, that Jenkins, by an instrument in writing, dated February 1st, 1870, assigned and conveyed to the plaintiff "the exclusive right and license, within the states

---

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge, and by Hubert A. Banning, Esq., and Henry Arden, Esq., and here republished by permission.]

of New York and New Jersey, to use said elastic packing in the manufacture of any and all manner of valves, cocks and other articles in which said elastic packing could or should be used, and sell for use in said territory and elsewhere in the United States, such valves, cocks, &c., so manufactured." It also alleges, that, under such rights, the plaintiff made and sold "valves, cocks and other articles containing said elastic packing." It also alleges, as an infringement, that the defendants did, in New York and New Jersey, "use and vend to others to be used the aforesaid invention and discovery, and did cause the same to be done, and did make, use, and vend to others to be used, valves, cocks and other articles employing and containing said improved elastic packing."

To this bill the defendants interpose a plea, which sets forth, "that the said Charles Nelson is not, and never has been, the assignee of the said letters patent in said bill set forth, or of any territorial grant under the same, in manner and form as set forth in said bill, and that the said letters patent are now the exclusive property of Thomas William Clarke of Boston, in the county of Suffolk, and state of Massachusetts, under the following claim of title: The said Nathaniel Jenkins died, on or about the twentieth day of May, 1872, leaving a will duly probated in said county of Suffolk, in the probate court thereof, whereof Charles F. Jenkins, Alfred W. Chandler and John Hassam were executors, and came into full possession of said letters patent. The said Charles Jenkins, Alfred W. Chandler and John Hassam, executors as aforesaid, on the —— day of ——, 1874, duly assigned said letters patent to Alfred B. Jenkins, under power contained in said will, and thereby conferred upon them. The said Alfred B. Jenkins, on the fifth day of November, 1874, duly assigned the same to said Thomas William Clarke. * * * Wherefore defendants say, that the title to said letters patent is not in the said Charles Nelson, for the states of New York and New Jersey." The plaintiff takes issue on this plea, by a replication.

Proofs have been taken by both parties, and the case has been brought to a hearing thereon. The real question tried and argued has been, whether the plaintiff has a right to maintain this suit in his own name alone, as it is now brought. The bill does not aver that the plaintiff is or has been the assignee of the patent or of any territorial grant under the same. Therefore, the plea, in denying that, denies what is not averred in the bill. The allegation of the bill as to the right and license conveyed to the plaintiff by Jenkins, by the instrument of February 1st, 1870, is not otherwise denied by the plea. The parties have, however, treated the pleadings and proofs as raising the question, whether the plaintiff has such a title to, or under, the patent as authorizes him to bring this suit in his own name alone; and that is the question which will be considered.

On the 1st of February, 1870, Jenkins owned two other patents which had been granted to him, besides the reissued patent of 1869. That reissue will be called the 1869 patent. The 1869 patent was for a packing composed of refractory earth and vulcanized rubber. Of the other two patents, one, granted October 15th, 1867, was for a packing for joints and valves composed of pulverized mica and vulcanized rubber, or one composed of pulverized wood charcoal and vulcanized rubber. The other patent was granted October 6th, 1868, and was for an "improvement in steam globe valves," of that class in which an elastic or semi-elastic packing could be employed, the packing being in an annular chamber in the valve head. Premising this, the instrument of 1870 was made. It contains these provisions: "Whereas said Jenkins is the proprietor of certain inventions in the construction of stop valves, cocks, &c., and in packing or discs for stop valves, cocks and other purposes; and whereas the said Jenkins has entered into an arrangement with said Nelson to license him to manufacture stop valves, cocks, &c., under his patent dated October 6th, 1868, and also other valves, cocks, &c., of a suitable pattern to employ his said patent packing or discs, and said Nelson does agree to pay to said Jenkins certain royalties on the valves, cocks, &c., so made by him, and to conduct the manufacture and sale of said valves, cocks, &c., in a manner that will insure the best results to the parties herein named: Now, therefore, said Jenkins does hereby authorize, empower and license the said Nelson to manufacture and sell valves, cocks, &c., of any and every kind, name and description, for any and every purpose, according to his said letters patent, dated October 6th, 1868, and does also authorize and empower said Nelson to make any and every other valves, cocks, &c., not constructed according to said letters patent, which can be suitably arranged for employing the Jenkins patent packing or discs, without making the said Jenkins liable for any infringements of letters patent on valves, cocks, &c., taken out by any other party or parties; and said Jenkins does hereby covenant and agree to and with said Nelson, that he will sell and promptly supply all his orders for the patent packing or discs, such as are to be used in the construction of the valves, cocks, &c., so made by him or for him, at a discount of twenty (20) per cent. from the latest list of prices of such packing or discs, advertised or circulated by him, a copy of which said list is hereunto annexed, in order to show the prices at this date;" (here follows the list of prices of packing or discs;) "and the said Jenkins does also covenant and agree, to and with the said Nelson, that he will not hereafter grant any authority or license to any person or persons to manufacture, within the

states of New York and New Jersey, any valves, cocks, or any article in which shall be used the Jenkins patent packing or discs, but that said Nelson shall have the exclusive right to manufacture, within the states of New York and New Jersey, any valves, cocks, or any other article, under said letters patent, dated October 6th, 1868, or renewed patents, or patents for improvements thereon; and said Nelson agrees to pay a royalty for any article he may manufacture, not within specified, in which the said packing is used, the royalty to be fixed upon when such article, not specified, is manufactured; and said Nelson shall have the right to sell in any of the United States, valves, cocks, or any other article, manufactured under said letters patent, or renewed patents, or patents for improvements thereon; and, for and in consideration of the same, the said Nelson does hereby agree with the said Jenkins, his executors, administrators, and the assigns of said Jenkins, of said patents for valves and packing, that he will make the business of manufacturing and selling the Jenkins patent compression valves and gauge cocks a specialty, that he will endeavor to introduce them into use in preference to any other valve or gauge cocks, and recommend them as a superior article, and that he will manufacture them of good material, and equal in weight and workmanship to those heretofore manufactured by him; and said Nelson also agrees to thoroughly advertise said valves and cocks, so to be made by him or for him, and bring them thoroughly to the attention of persons using and employing valves and cocks, and that he will purchase all the packings or discs required for such valves and gauge cocks, from said Jenkins or his legal representatives, or those owning said patents, at the aforesaid rates, viz., at a discount of twenty (20) per cent. from the latest list prices, and that he will pay to said Jenkins, his executors, administrators, or those owning said patent of October 6th, 1868, a royalty at the following rates, for each and every valve made and sold;" (here follows a tariff of royalty on each valve, according to its inches of opening, and on every gauge cock sold) "and said Nelson does hereby agree to stamp, or have stamped, each and every valve made by him, or for him, under said letters patent, as follows: 'Patented, Oct. 6th, 1868—May 8th, 1866, reissued Aug. 3d, 1869—Oct. 15th, 1867;' and said Nelson further agrees to account, at the end of each and every month, for the valves and cocks, or any other article sold by him, or for him, since the last account rendered, specifying the sizes, and the number of each size, and articles sold, and to pay to said Jenkins, his executors, administrators or assigns of his said letters patent, the sum of money due under this agreement, and according to such account, forthwith; and it is mutually understood and agreed, that the said Nelson may sell, transfer, or convey this

right or license to any member or members of his firm, now or hereafter engaged in the carrying on of business with him, and that, in case of the death of said Nelson, this license or right shall descend to the survivor or survivors, or the administrators of the deceased, who shall possess all the rights and privileges guaranteed to said Nelson by this agreement, and such administrators may sell such right or license to any parties in the said firm, but neither the said Nelson, nor the administrators of said Nelson, nor any member or members of his firm, shall have any right to assign this right or license to any others than those now engaged, or those who may hereafter be engaged, in business with said Nelson, without first obtaining a written consent of said Jenkins, his executors, administrators, or assigns of his said letters patent; and said Jenkins further agrees, that this agreement shall subsist for the term of said letters patent, and that it shall be binding on the lawful possessors of the said letters patent for said packing, dated May 8th, 1866, reissued August 3d, 1869, and dated October 15th, 1867; and the said Nelson agrees that this agreement shall subsist during the term of said letters patent, and shall be binding on him, his executors, administrators and assigns."

The scope and meaning of the provisions of this agreement are very plain. Jenkins had a patent for valves and two patents for packing. The valves were such as could employ the patented packing. The patented packing could also be used in other valves, not covered by the 1868 patent. Jenkins desired to retain in his own hands the manufacture of the packing, and to sell it. He desired to create a market for it. He could do so by promoting the manufacture and sale of valves made according to his 1868 patent, which would require the patented packing, and of other valves which would require it. By licensing the manufacture of valves to be made according to his 1868 patent, he could derive a royalty on each valve, and at the same time obtain a profit on the manufacture and sale by himself of the packing to be used in such valve. He would also be able thus to ensure that the packing should be a satisfactory article. He, therefore, licenses Nelson to make and sell valves under the 1868 patent, and other valves which could employ the packing of the 1867 and 1869 patents, without making him (Jenkins) liable for infringing any patents for such other valves. He agrees to sell to Nelson, for use in such valves, packing made under the 1867 and 1869 patents, at specified prices. He agrees not to license any one to make in New York and New Jersey any article in which the packing of the patents of 1867 or 1869 shall be used. He agrees that Nelson shall have the exclusive right to make in New York and New Jersey any article under the 1868 patent. Nelson agrees to pay a specified royalty on every valve made and

sold according to the patent of 1868, and a specified royalty on every gauge-cock sold according to that patent, and on every other article he should make, not specified, in which such packing should be used, a royalty to be thereafter fixed. Nelson is to have the right to sell anywhere in the United States any article he may make under the 1868 patent. He agrees to purchase from Jenkins all the packing required for such valves and gauge-cocks, at the prices specified. He agrees to stamp every valve made by him or for him under the 1868 patent, with the dates of all three of the patents. He agrees to account to Jenkins every month for all articles sold by him under the agreement, and to pay forthwith the money due under the agreement and according to the account. He ·is authorized to transfer the license to those then engaged, or who might thereafter be engaged, with him in business, but he is forbidden to transfer it to any one else without the written consent of Jenkins. The agreement is to continue during the term of the 1868 patent and is to bind the owners of the patents of 1867 and 1869.

The instrument calls itself a license. It is not necessary in this case to construe its provisions as a license under the patent of 1868, for the suit is not brought on that patent, nor is it proper to do so, as between the present owners of that patent and Nelson, as the former are not parties to this suit. It is plainly a license to some extent to make and sell articles under the patent of 1868. As to the patents of 1867 and 1869. Jenkins owning those patents, and being engaged in making packing under them, agrees to sell such packing to Nelson at specified prices, with a view to having Nelson use it in articles to be made under the 1868 patent and in other articles fitted for it. But, the moment it was bought by Nelson it passed out from under the monopoly of the patents of 1867 and 1869, and it required no license to enable Nelson then to use it for any purpose for which it could be used. The fact of sale carried with it a license to use and a license to sell again. The instrument conveys to Nelson no right to make packing under either of the packing patents. The royalty to be paid is to be paid solely under the patent of 1868 and for a license under it. There is no royalty to be paid under either of the packing patents. The packing is to be bought from Jenkins as an article of merchandise, at a specified price, and Nelson agrees to buy from Jenkins all the packing he, Nelson, is to use. The valves made according to the patent of 1868 are to be stamped with the dates of all three of the patents, because the valves are made by Nelson under the patent of 1868, and the packing in them is made by Jenkins under the packing patents. Whether the instrument gives to Nelson, as against the owners of the packing patents, an exclusive right to use the patented packing in New York and New Jersey, is a ques-

tion not necessary or proper to be decided in this case. At most, the instrument is, as to the patent sued on, a mere license.

It was provided by section 11 of the act of July 4, 1836 (5 Stat. 121), which was the statute in force when the 1868 and 1869 patents were granted, and when the instrument of February 1st, 1870, was made, that "every patent shall be assignable in law, either as to the whole interest, or any undivided part thereof, by any instrument in writing, which assignment and also every grant and conveyance of the exclusive right under any patent, to make and use, and to grant to others to make and use, the thing patented, within and throughout any specified part or portion of the United States, shall be recorded in the patent office within three months from the execution thereof." The 14th section of the same act provided, that an action at law for damages for infringement might be brought "in the name or names of the person or persons interested, whether as patentees, assignees, or as grantees of the exclusive right within and throughout a specified part of the United States." The seventeenth section of the same act gave original cognizance "as well in equity as at law" to all the circuit courts of the United States, of "all actions, suits, controversies, and cases" arising under any patent law, and gave power to such courts, "upon bill in equity filed by any party aggrieved, in any such case, to grant injunctions, according to the course and principles of courts of equity," to prevent infringements. Under these provisions it was always held, that no mere licensee could bring a suit for infringement, either at law or in equity, in his own name alone. In Gayler v. Wilder. 10 How. [51 U. S.] 477, 494, it is said, that while, by the fourteenth section of the act of 1836, the patentee may assign his exclusive right within and throughout a specified part of the United States, and the assignee may, upon such an assignment, sue in his own name, for an infringement of his rights, yet, in order to enable him to sue, the assignment must convey to him the entire and unqualified monopoly which the patentee held in the territory specified, excluding the patentee himself as well as others; and that any assignment short of this is a mere license. That was a suit at law. Wilder, the assignee of the whole of the patent, had granted to one Herring the exclusive right to make and vend the patented article, a safe, in the city and county of New York, for a royalty of a cent a pound on each pound the safe might weigh. But Wilder reserved the right to set up a manufactory for making the safes in the state of New York, not within fifty miles of the city, and to sell them in the state of New York, paying to Herring a cent a pound on each safe so sold within the state. The supreme court held that the agreement was "not an assignment of an undivided interest in the whole patent, nor the assignment of an ex-

clusive right to the entire monopoly in the state or city of New York;" that it, was, therefore, "to be regarded as a license only," and did not, under the statute, enable Herring to maintain an action for infringement; that Wilder continued to be the legal owner of the patent; and that the suit was properly brought in the name of Wilder. The same view was held by Mr. Justice Nelson and Judge Ingersoll, in the circuit court of the United States for the district of Connecticut, in Potter v. Holland [Case No. 11,329]. If, within the foregoing principles, the plaintiff in this suit is only a licensee, he cannot sue in equity without joining with him as plaintiff the owner of the legal title (Curt. Pat., 3d Ed., § 403); and such owner is, in such case, a proper party. Woodworth v. Wilson, 4 How. [45 U. S.] 712. A suit at law is, in such case, properly brought in the name of such owner, in behalf of the licensee. Goodyear v. McBurney [Case No. 5,574]; Goodyear v. Bishop [Id. 5,558]. These principles are recognized in Littlefield v. Perry, 21 Wall. [88 U. S.] 205, 219, 223, and there is nothing in that case which favors the right of the plaintiff in this case to sue alone. The court in that case say: "A mere licensee cannot sue strangers who infringe. In such case redress is obtained through, or in the name of the patentee or his assignee."

The thirty-sixth section of the act of July 8. 1870 (16 Stat. 203), provides, that "every patent or any interest therein shall be assignable in law, by an instrument in writing; and the patentee, or his assigns or legal representatives, may, in like manner, grant and convey an exclusive right, under his patent, to the whole or any specified part of the United States." This provision is not different from that found in section 11 of the act of 1836, and is now embodied in section 4898 of the Revised Statutes. The "exclusive right," under a patent, to a specified part of the United States, means an exclusive right to do everything under the patent, in such specified part, which the patentee could do, and is the same thing as the "exclusive right," under the patent, "to make and use, and to grant to others to make and use, the thing patented, within and throughout" such specified part. Section 55 of the act of 1870 contains the same provisions, in substance, which are above cited from section 17 of the act of 1836, and they are now embodied in sections 629, 711, and 4921 of the Revised Statutes. Section 59 of the act of 1870 provides, that an action at law for damages for infringement may be brought "in the name of the party interested, either as patentee, assignee or grantee." This means such a grantee as is referred to in section 36 of the act of 1870, and no other grantee than such as is spoken of in section 14 of the act of 1836. The provision above cited from section 59 of the act of 1870 is now embodied in section 4919 of the Revised Statutes. There

is no ground for saying that the scope of the act of 1870 is greater than that of the act of 1836.

Applying the foregoing interpretation of the law to the provisions of the instrument under which the plaintiff claims the right to bring this suit in his own name alone, it is entirely clear that he has no such right, because he has not the title to the patent for any part of New York or New Jersey, which is the defence set up in the plea. Even if the agreement between Jenkins and Nelson gave to Nelson such an exclusive right and license to use the packing of the reissue of 1869 as is alleged in the bill, the plaintiff would have no right to maintain this suit in his own name alone. The plea is allowed and the bill is dismissed, with costs.

[For other cases involving this patent, see note to Jenkins v. Johnson, Case No. 7,271.]